UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

MATTHEW G. AINSWORTH,           )
                                )
              Plaintiff,        )
                                )
        v.                      ) Cause No. 1:14-cv-255
                                )
CAROLYN W. COLVIN,              )
Acting Commissioner of Social Security,  )
                                )
              Defendant.        )

## OPINION AND ORDER

This matter is before the court on petition for judicial review of the decision of the Commissioner filed by the plaintiff, Matthew G. Ainsworth, on August 20, 2014. For the following reasons, the decision of the Commissioner is **AFFIRMED**.

*Background*

The plaintiff, Matthew G. Ainsworth, filed an application for Disability Insurance Benefits and Supplemental Security Income on November 2, 2011, alleging a disability onset date of January 1, 2009. (Tr. 72). The Disability Determination Bureau denied Ainsworth's application on January 6, 2012, and again upon reconsideration on March 7, 2012. (Tr. 72). Ainsworth subsequently filed a timely request for a hearing on May 10, 2012. (Tr. 14). A hearing was held on February 20, 2013, before Administrative Law Judge (ALJ) Patricia Melvin, and the ALJ issued an unfavorable decision on April 5, 2013. (Tr. 72–84). Vocational Expert (VE) Amy Kutschbach, Charlene Elrod, Ainsworth's mother, and Ainsworth testified at the hearing. (Tr. 72). The Appeals Council denied review on June 24, 2014, making the ALJ's decision the final decision of the Commissioner. (Tr. 1–7).

The ALJ found that Ainsworth met the insured status requirements of the Social Security Act through December 31, 2016. (Tr. 74). At step one of the five step sequential analysis for determining whether an individual is disabled, the ALJ found that Ainsworth had not engaged in substantial gainful activity since January 1, 2009, the alleged onset date. (Tr. 74). At step two, the ALJ determined that Ainsworth had the following severe impairments: degenerative disc disease of the cervical spine and hypertension. (Tr. 75). Also at step two, the ALJ determined that Ainsworth's other limitations were not severe, including hearing loss, chronic obstructive pulmonary disease, arthritis, small vessel disease, and hypothyroidism. (Tr. 75).

The ALJ found Ainsworth's chronic obstructive pulmonary disease not severe because his spirometry reports indicated a mild obstructive lung defect, chest x-rays and breath sounds were normal, his medications helped, and he used an inhaler only three times per week. (Tr. 75). The ALJ found his arthritis not severe because x-rays did not reveal any arthritic changes in Ainsworth's shoulder and only early osteoarthritis in his right big toe. (Tr. 75). Additionally, Ainsworth did not have arthritis in his right hip. (Tr. 75). Although he experienced chest pains between one second and a couple of minutes, Ainsworth's small vessel disease was not severe because he went a couple weeks without any chest pains. (Tr. 75). Additionally, he was not receiving any treatment for his small vessel disease. (Tr. 75). Finally, the ALJ found his hypothyroidism not severe because his medication controlled it. (Tr. 75).

The ALJ also found Ainsworth's mental impairments, depression and anxiety, not severe. (Tr. 75). She noted that Ainsworth's mental impairments did not stop him from working or cause him to seek psychiatric care. (Tr. 75). Moreover, treatment notes demonstrated that Ainsworth was alert and oriented with good insight and intact memory. (Tr. 75). To determine

whether Ainsworth's mental impairments were severe, the ALJ considered the Paragraph B criteria. (Tr. 76).

The ALJ found that Ainsworth had no limitations in daily living activities. (Tr. 76). He could care for his personal hygiene, prepare meals, do laundry, clean, mow the lawn, do repairs, drive, shop, and fly RC planes. (Tr. 76). Additionally, Joseph Pressner, a State agency psychological consultant, concluded that Ainsworth had no limitations in this area, which the ALJ found consistent with the record. (Tr. 76). The ALJ also found that Ainsworth had no limitations in social functioning. (Tr. 76). Ainsworth talked to friends and family and did not report problems getting along with others or authority figures. (Tr. 76). Dr. Pressner also found that Ainsworth did not have limitations in social functioning, which the ALJ found consistent with the record. (Tr. 76).

The ALJ found that Ainsworth had no limitations in concentration, persistence, or pace. (Tr. 76). Ainsworth reported difficulty with memory, concentration, and his ability to complete tasks. (Tr. 76). However, Dr. Pressner found that he had no limitations in this area, which the ALJ found consistent with the record. (Tr. 76). Additionally, the ALJ concluded that Ainsworth had no limitations in sustaining focus, attention, or concentration long enough to complete tasks in a work setting appropriately and timely. (Tr. 76). The ALJ also found that Ainsworth had not experienced any episodes of decompensation of extended duration. (Tr. 76). Therefore, Ainsworth's mental impairments did not meet the Paragraph B criteria because he did not have more than a mild limitation in any of the first three areas and had no episodes of decompensation of extended duration. (Tr. 76).

At step three, the ALJ concluded that Ainsworth did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed

impairments. (Tr. 76–77). She considered Listing 1.04 for nerve root compression, spinal arachnoiditis, and lumbar spinal stenosis and Listing 1.00(B)(2)(b) for an inability to ambulate effectively. (Tr. 77). The ALJ stated that hypertension did not have a specific listing but that Listing 4.00H indicated that hypertension generally caused disability through its effects on other body systems. (Tr. 77). Therefore, she considered listings for the affected body systems such as the heart, brain, kidneys, and eyes. (Tr. 77). However, she found that Ainsworth's hypertension did not meet a listing for any body system. (Tr. 77).

The ALJ then assessed Ainsworth's residual functional capacity as follows:

> the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can never climb ladders, ropes, or scaffolds. The claimant can occasionally climb ramps or stairs. The claimant can occasionally balance, stoop, crouch, and kneel, but never crawl. The claimant can frequently reach overhead bilaterally. The claimant must avoid concentrated exposure to wetness or humidity, specifically slippery or uneven surfaces. The claimant must avoid concentrated exposure to excessive noise, vibration, and unprotected heights.

(Tr. 77). The ALJ explained that in considering Ainsworth's symptoms she followed a two-step process. (Tr. 77). First, she determined whether there was an underlying medically determinable physical or mental impairment that was shown by a medically acceptable clinical and laboratory diagnostic technique that reasonably could be expected to produce Ainsworth's pain or other symptoms. (Tr. 77). Then, she evaluated the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limited Ainsworth's functioning. (Tr. 77–78).

Ainsworth alleged disability based on arthritis, right ear deafness, chronic obstructive pulmonary disease, learning disability, high blood pressure, small vessel disease, and bone fragments in his right foot. (Tr. 78). He used a cane for long distance because of pain in his right foot. (Tr. 78). Additionally, he reported extreme fatigue and pain in his neck and

shoulders.  (Tr. 78).  Ainsworth indicated that the pain was constant and ranged from 3-4/10 to

9/10.  (Tr. 78).  He noted that driving aggravated his pain and that he had difficulty looking up.

(Tr. 78).  He took oxycodone and Oxycontin for pain but claimed that the side effects were

disabling.  (Tr. 78).  Ainsworth testified that he got short of breath after going up a couple of

steps and that he could walk or stand for ten to fifteen minutes, sit for twenty to thirty minutes,

and lift ten pounds.  (Tr. 78).

The ALJ found that Ainsworth's impairments could cause his alleged symptoms, but she

also found him incredible regarding the intensity, persistence, and limiting effects of those

symptoms.  (Tr. 78).  She noted that the objective medical evidence did not support Ainsworth's

claims of disabling symptoms and limitations.  (Tr. 78).  On September 24, 2009, Ainsworth

went to the emergency room and had an elevated blood pressure reading of 221 over 130.  (Tr.

78).  However, he had no edema and no motor or sensory deficits.  (Tr. 78).  Dr. Mary Wilger

diagnosed him with a hypertensive emergency, but he was released the following day after a

normal MRI and echocardiogram.  (Tr. 78).

In April 2010, Dr. Matthew Snyder evaluated Ainsworth for foot and left shoulder pain.

(Tr. 78).  Ainsworth's shoulder had a slightly reduced range of motion but he had negative

impingement signs for his shoulder and a normal gait.  (Tr. 78).  In June, Dr. Kanakapura

Venkatakrishna found that Ainsworth's hypertension was better controlled because of his 134

over 78 reading.  (Tr. 78).  An MRI revealed that his left knee was normal.  (Tr. 78).  Also in

June, Ainsworth presented with shoulder pain to Dr. Anuradha Kollipara, who diagnosed him

with hypertension, right foot pain, and left shoulder pain.  (Tr. 78).  In September, Ainsworth

received a right-sided hearing implant, and in November, he informed Dr. Kollipara that he felt

good.  (Tr. 78).

In February 2011, Ainsworth went to the emergency room for drainage from his cochlear implant site. (Tr. 79). In March, he reported to Dr. Kollipara for extremity numbness and tenderness from the thoracic region to his shoulder. (Tr. 79). In April 2011, cervical spine x-rays revealed degenerative changes, including mild disc space narrowing, an MRI suggested possible nerve root impingement because of mild to moderate foraminal narrowing, and lumbar spine x-rays showed degenerative changes consistent with age. (Tr. 79). In May 2011, an electromyography test did not show any abnormalities, and an MRI showed stable changes consistent with age or minimal small vessel ischemic disease. (Tr. 79). Additionally, a physical examination noted normal muscle tone and strength with normal sensation, and Ainsworth could heel, toe, and tandem walk. (Tr. 79).

In June, Dr. Venkatakrishna indicated that Ainsworth's blood pressure was well controlled, and in June and August, Ainsworth received epidural steroid injections to relieve cervical stenosis pain. (Tr. 79). At an August consultation, Ainsworth declined surgical intervention to seek conservative care. (Tr. 79). Additionally, he was referred to physical therapy but declined because he was too busy at work. (Tr. 79). In September, Ainsworth went to a pain management clinic, where his mood and affect were appropriate. (Tr. 79). Additionally, Ainsworth was tender and his shoulder had a decreased range of motion. (Tr. 79). However, he had normal strength and sensation, and his gait, tandem, toe, and heel walk were normal. (Tr. 79). Further treatment notes indicated a decreased range of motion in the cervical spine, but otherwise normal findings. (Tr. 79).

An October 2011 stress test had mildly abnormal findings, and in December, Ainsworth received lumbar and cervical steroid injections for facet arthropathy. (Tr. 79). In March 2012, he underwent a cervical spine fusion, and x-rays showed that his spine healed well, so he was

released with no restrictions. (Tr. 79). On June 22, 2012, he underwent a left knee arthroscopy and a limited synovectomy. (Tr. 79). Treatment notes indicated that he recovered well and returned to work activities as tolerated. (Tr. 79). In December, Ainsworth told his pain management clinic that he did not have any medication side effects, and his physical examination noted similar findings of tenderness, decreased range of motion, and normal strength, gait, and sensation. (Tr. 79).

The ALJ noted that Ainsworth could ambulate without an assistive device, despite Dr. Kollipara prescribing one. (Tr. 79). Dr. Kollipara prescribed a cane for Ainsworth's degenerative disc disease, but he was not treating Ainsworth for that condition. (Tr. 79). Additionally, his treatment notes did not indicate that Ainsworth's gait was abnormal. (Tr. 79). The ALJ further noted that Ainsworth did not appear to be in pain each time he reported to the pain management center. (Tr. 79). However, in February 2012, Ainsworth did report to a pain management clinic with his cane. (Tr. 79). During the examination, he had decreased motor strength. (Tr. 79). That same day, Ainsworth went to the emergency room for chest pains, but he was released later that day. (Tr. 79). A medical record from March 12, 2013 indicated that Ainsworth was diagnosed with left carpal tunnel syndrome, but the ALJ noted that there was no objective support for that finding. (Tr. 80).

The ALJ concluded that the objective medical evidence demonstrated significant back issues, considering Ainsworth's stenosis, degenerative changes, and surgery. (Tr. 80). However, she noted that his lumbar spine did not degenerate to the same degree and that he had a normal gait and toe, heel, and tandem walk. (Tr. 80). The ALJ found those findings inconsistent with Ainsworth's claims of limited standing and walking. (Tr. 80). She also noted that medication controlled Ainsworth's hypertension, and that Dr. Kollipara's notes did not reveal significant

physical findings.  (Tr. 80).  The ALJ also indicated that Ainsworth saw Dr. Kollipara for routine follow-up visits or acute illness, such as acute knee pain or infections.  (Tr. 80).

The ALJ further stated that Ainsworth's pain improved with injections and that he did not show pain constantly.  (Tr. 80).  However, she found that his degenerative changes with decreased range of motion precluded him from more than light work with various limitations. (Tr. 80).  For example, he needed postural, reaching, and environmental limitations to prevent further injury or symptom exacerbation.  (Tr. 80).  Furthermore, Ainsworth's hypertension also would preclude hazards.  (Tr. 80).  Although Ainsworth alleged right foot pain and a need for a cane, the ALJ documented that the injury causing the pain occurred twenty years ago and that Ainsworth only saw a specialist twice.  (Tr. 80).  Additionally, Ainsworth received no treatment for this condition, besides wearing special shoe insoles.  (Tr. 80).

The ALJ further found Ainsworth's daily living activities inconsistent with his claims of disabling pain and symptoms.  (Tr. 80).  For example, the ALJ stated that Ainsworth's activities were not as limited as one would expect, considering his allegations.  (Tr. 80).  Specifically, the ALJ noted that Ainsworth's ability to clean, shop, cook, and do yard work suggested an ability to perform light work that involved lifting and standing.  (Tr. 80).  She commented that Ainsworth worked consistently after the alleged onset date, which suggested greater abilities than he alleged.  (Tr. 80).  Although Ainsworth's earnings did not reach substantial gainful activity, the ALJ mentioned that they were close and, considering that he was self-employed, he may have qualified for substantial gainful activity.  (Tr. 80).  The ALJ also noted that Ainsworth declined physical therapy because he was too busy at work.  (Tr. 80).  Ultimately, the ALJ found Ainsworth partially credible because he needed multiple steroid injections and underwent surgery.  (Tr. 80).

The ALJ then reviewed the opinion evidence. (Tr. 80–81). On January 23, 2013, Dr. Kollipara submitted a form that found Ainsworth disabled because his attention and concentration would be disrupted constantly. (Tr. 80). He further found that Ainsworth could not stand, walk, or sit for eight hours during a workday and that he would miss more than four days of work per month. (Tr. 80). Additionally, Dr. Kollipara included postural, environmental, and reaching restrictions. (Tr. 80). The ALJ gave his opinion no weight. (Tr. 80). She noted that Dr. Kollipara treated Ainsworth for hypertension, chronic obstructive pulmonary disease, hypothyroidism, and other acute illnesses. (Tr. 81). Despite being a treating physician, the ALJ found that his treating relationship did not support his opinion. (Tr. 81). Additionally, the ALJ found his opinion inconsistent with his physical examinations, which were benign, other medical evidence, which showed improvement and a normal gait, and Ainsworth's daily living activities, which suggested an ability to perform light work. (Tr. 81).

On August 25, 2011, Dr. Shugart concluded that Ainsworth did not have any restrictions from his cervical stenosis. (Tr. 81). The ALJ gave that opinion some weight because it suggested that Ainsworth could perform at least light work and it was consistent with Dr. Shugart's notes later in the record. (Tr. 81). However, the ALJ limited the opinion to some weight because it was vague. (Tr. 81).

Dr. J.V. Corcoran, a Stage agency medical consultant, found that Ainsworth could perform light work with limitations consistent with the RFC. (TR. 81). Dr. J. Eskonen, another State agency medical consultant, affirmed that opinion. (Tr. 81). The ALJ gave each opinion great weight because they were consistent with the objective medical evidence, which indicated that Ainsworth improved with surgery, generally had benign physical examinations, and experienced some pain due to cervical degenerative changes. (Tr. 81).

Ainsworth submitted a letter from "Medicaid for Employees with Disabilities." (Tr. 81). The ALJ indicated that the program was for employees who were working, rather than Social Security Disability, which was for employees who could not work. (Tr. 81). Therefore, the ALJ concluded that the letter indicated that Ainsworth was not disabled. (Tr. 81). The ALJ gave the letter some weight but mentioned that findings from other agencies were not binding on her decision. (Tr. 81).

Ainsworth's mother reported similar daily living activities to those discussed above. (Tr. 81). The ALJ gave her report some weight because it was consistent with the RFC and the objective medical evidence. (Tr. 81). However, the ALJ noted that she could not give the report more weight because Ainsworth's mother did not have consistent contact with him. (Tr. 81). Additionally, Ainsworth's mother testified that he could work for only three hours a day, that he forgot what projects he was completing, and that he could not work for a traditional employer. (Tr. 81). The ALJ gave that testimony little weight because it was inconsistent with the RFC and the objective medical evidence. (Tr. 81).

Ultimately, the ALJ found her RFC consistent with the objective medical evidence. (Tr. 81). She mentioned that treatment notes were inconsistent with Ainsworth's claims of disabling pain because they indicated a normal gait, normal sensation, and normal strength. (Tr. 81). Additionally, the ALJ noted that Dr. Kollipara's physical examinations did not demonstrate any issues that supported a need for a cane. (Tr. 81). Furthermore, the State agency opinions afforded great weight were consistent with the objective medical evidence, and Ainsworth's allegations were inconsistent with his daily living activities and work history. (Tr. 81). The ALJ conceded that Ainsworth experienced some pain and limitations but only to the extent stated in the RFC. (Tr. 82).

At step four, the ALJ found that Ainsworth could perform his past relevant work as a janitorial supervisor. (Tr. 82). However, the ALJ also determined that Ainsworth could perform other jobs in the national economy. (Tr. 82). Considering Ainsworth's age, education, work experience, and RFC, the ALJ concluded that there were jobs in the national economy that he could perform, including repack room worker (350-400 jobs regionally and 450,000 jobs nationally), office helper (200-250 jobs regionally and 110,000 jobs nationally), and storage rental clerk (100-150 jobs regionally and 475,000 jobs nationally). (Tr. 83).

*Discussion*

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence. **42 U.S.C. § 405(g)** ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive."); *Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014); *Bates v. Colvin*, 736 F.3d 1093, 1097 (7th Cir. 2013) ("We will uphold the Commissioner's final decision if the ALJ applied the correct legal standards and supported her decision with substantial evidence."); *Pepper v. Colvin*, 712 F.3d 351, 361–62 (7th Cir. 2013); *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005); *Lopez ex rel Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept to support such a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 852 (1972) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 2d 140 (1938)); *see Bates*, 736 F.3d at 1098; *Pepper*, 712 F.3d at 361–62; *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003); *Sims v. Barnhart*, 309 F.3d 424, 428 (7th Cir. 2002). An ALJ's decision must be affirmed if the findings are supported by substantial evidence and if there have

been no errors of law. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013); *Rice v. Barnhart*, 384 F.3d 363, 368–69 (7th Cir. 2004); *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez*, 336 F.3d at 539.

Disability and supplemental insurance benefits are available only to those individuals who can establish "disability" under the terms of the Social Security Act. The claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. § 423(d)(1)(A)**. The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability. **20 C.F.R. §§ 404.1520, 416.920**. The ALJ first considers whether the claimant is presently employed or "engaged in substantial gainful activity." **20 C.F.R. §§ 404.1520(b), 416.920(b)**. If he is, the claimant is not disabled and the evaluation process is over. If he is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities." **20 C.F.R. §§ 404.1520(c), 416.920(c)**; *see Williams v. Colvin*, 757 F.3d 610, 613 (7th Cir. 2014) (discussing that the ALJ must consider the combined effects of the claimant's impairments). Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations. **20 C.F.R. § 401, pt. 404, subpt. P, app. 1**. If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling. However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" and the physical and mental demands of his past work.

If, at this fourth step, the claimant can perform his past relevant work, he will be found not disabled.  **20 C.F.R. §§ 404.1520(e), 416.920(e)**.  However, if the claimant shows that his impairment is so severe that he is unable to engage in his past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, in light of his age, education, job experience, and functional capacity to work, is capable of performing other work and that such work exists in the national economy.  **42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1520(f), 416.920(f)**.

First, Ainsworth has argued that the ALJ failed to evaluate his medical conditions at step two properly.  At step two, the claimant has the burden to establish that he has a severe impairment.  *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010).  A severe impairment is an "impairment or combination of impairments which significantly limits [one's] physical or mental ability to do basic work activities."  **20 C.F.R. §§ 404.1520(c), 404.1521(a)**; *Castile*, 617 F.3d at 926.  Basic work activities include "the abilities and aptitudes necessary to do most jobs," such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling."  **20 C.F.R. § 404.1521(b); *Stopka v. Astrue***, 2012 WL 266341, at *1 (N.D. Ill. Jan. 26, 2012). "[A]n impairment that is 'not severe' must be a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities." Social Security Ruling 96-3p, 1996 WL 374181, at *1.  Courts have characterized step two as a *de minimis* screening device that disposes of groundless claims.  ***Johnson v. Sullivan***, 922 F.2d 346, 347 (7th Cir. 1990); ***Elkins v. Astrue***, 2009 WL 1124963, at *8 (S.D. Ind. Apr. 24, 2009) (citing ***Webb v. Barnhart***, 433 F.3d 683, 688 (9th Cir. 2005)); *see **Stopka***, 2012 WL 266341 at *1 (listing cases supporting same).

Although the ALJ found that Ainsworth had two severe impairments and continued through the evaluation process, Ainsworth has argued that the ALJ erred by finding some of his impairments not severe. First, he has claimed that his small vessel disease was a severe impairment. Ainsworth noted that a neurologist concluded that he had small vessel disease, that the disease might cover his entire body, and that it may be associated with his memory problems. He also indicated that the ALJ failed to mention his carpal tunnel syndrome at step two, despite concluding that the diagnosis had no objective support later in the opinion. Moreover, Ainsworth stated that the ALJ failed to explain why his hearing loss was not severe.

The ALJ identified Ainsworth's testimony that his small vessel disease caused chest pains that last between one second and a couple of minutes. (Tr. 75). However, the ALJ indicated that Ainsworth had gone a couple of weeks without any chest pains and that he did not receive any medication for this condition. (Tr. 75). Therefore, the ALJ concluded that Ainsworth's small vessel disease was not severe because it did not cause more than a minimal limitation of his physical or mental ability to do basic work activities. (Tr. 75). The ALJ did not mention Ainsworth's carpal tunnel syndrome or explain why his hearing loss was not severe at step two.

Although the ALJ could have explained her findings further that Ainsworth's small vessel disease, carpal tunnel syndrome, and hearing loss were not severe, those conclusions did not alter the outcome of this case because the ALJ was required to proceed through the evaluation process. *See Castile*, 617 F.3d at 927 (citing *Golembiewski*, 322 F.3d 912, 918 (7th Cir. 2003) ("Having found that one or more of [appellant's] impairments was 'severe,' the ALJ needed to consider the aggregate effect of the entire constellation of ailments.")). Therefore, at step four, the ALJ indicated that there was no objective support for Ainsworth's carpal tunnel

diagnosis. (Tr. 80). Additionally, she accounted for Ainsworth's hearing loss by restricting him from excessive noise. (Tr. 77).

Ainsworth has argued that any errors were not harmless because the ALJ was required to consider his impairments in combination. However, he did not identify how the ALJ failed to consider his symptoms in combination or how any errors at step two caused an error later in the process. Moreover, he did not meet his burden to prove that the impairments were severe. *Castile*, 617 F.3d at 926. Rather, the ALJ stated that she considered all of Ainsworth's impairments individually and in combination. (Tr. 77). Furthermore, the ALJ demonstrated that she considered Ainsworth's carpal tunnel syndrome and hearing loss properly by discussing those impairments at step four. Therefore, any error at step two did not affect the ALJ's determination at step four.

Next, Ainsworth has argued that the ALJ failed to develop the record. The ALJ has a duty to develop a full and fair record. *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009) (citations omitted). Generally, courts will uphold the Commissioner's decision regarding how much evidence to gather. *Nelms*, 553 F.3d at 1098 (citations omitted). Therefore, a claimant must demonstrate that there was a significant omission—a prejudicial omission. *Nelms*, 553 F.3d at 1098. "Mere conjecture or speculation that additional evidence might have been obtained in the case is insufficient to warrant a remand." *Binion v. Shalala*, 13 F.3d 243, 246 (7th Cir. 1994). Rather, the claimant must present specific, relevant facts that the ALJ failed to consider, such as medical evidence. *Nelson v. Apfel*, 131 F.3d 1228, 1235 (7th Cir. 1997).

Specifically, Ainsworth has argued that the ALJ failed to obtain sufficient evidence regarding his mental impairments. He alleged that his depression and anxiety affected his work functions, and his treating physician concluded that they exacerbated his physical symptoms.

Considering those allegations, Ainsworth has claimed that the ALJ should have ordered a consultative examination to provide some evidence from a qualified medical professional regarding his mental limitations. He further noted that the Appeals Council failed to consider a psychological evaluation, dated May 1, 2013, nearly one month after the ALJ issued her opinion.

However, the record does contain evidence from a qualified professional. Dr. Pressner concluded that Ainsworth had no mental limitations, was not taking psychiatric medications, or receiving psychological treatment. (Tr. 520–33). Additionally, the ALJ reviewed Dr. Pressner's opinion at step two. (Tr. 76). Furthermore, the ALJ noted Ainsworth's testimony that his mental limitations did not stop him from working and treatment notes that found him "alert and oriented, with good insight and intact memory." (Tr. 75). Ainsworth has not demonstrated that the evidence was inadequate for the ALJ to reach a decision. Nor has he shown specific facts that the ALJ failed to consider. Moreover, the Appeals Council was not required to consider any evidence postdating the ALJ's opinion. **20 C.F.R. § 404.970(b); 20 C.F.R. § 416.1470(b)**. Therefore, the ALJ was not required to further develop the record.

Third, Ainsworth has claimed that the ALJ failed to evaluate his work activity properly. This court will sustain the ALJ's credibility determination unless it is "patently wrong" and not supported by the record. *Bates v. Colvin*, 736 F.3d 1093, 1098 (7th Cir. 2013); *Schmidt v. Astrue*, 496 F.3d 833, 843 (7th Cir. 2007); *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) ("Only if the trier of fact grounds his credibility finding in an observation or argument that is unreasonable or unsupported . . . can the finding be reversed."). The ALJ's "unique position to observe a witness" entitles her opinion to great deference. *Nelson v. Apfel*, 131 F.3d 1228, 1237 (7th Cir. 1997); *Allord v. Barnhart*, 455 F.3d 818, 821 (7th Cir. 2006). However, if the ALJ does not make explicit findings and does not explain them "in a way that affords meaningful

review," the ALJ's credibility determination is not entitled to deference. **Steele v. Barnhart**, 290 F.3d 936, 942 (7th Cir. 2002). Further, "when such determinations rest on objective factors or fundamental implausibilities rather than subjective considerations [such as a claimant's demeanor], appellate courts have greater freedom to review the ALJ's decision." **Clifford v. Apfel**, 227 F.3d 863, 872 (7th Cir. 2000); *see Bates*, 736 F.3d at 1098.

The ALJ must determine a claimant's credibility only after considering all of the claimant's "symptoms, including pain, and the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." **20 C.F.R. § 404.1529(a); *Arnold v. Barnhart***, 473 F.3d 816, 823 (7th Cir. 2007) ("[S]ubjective complaints need not be accepted insofar as they clash with other, objective medical evidence in the record."); ***Scheck v. Barnhart***, 357 F.3d 697, 703 (7th Cir. 2004). If the claimant's impairments reasonably could produce the symptoms of which the claimant is complaining, the ALJ must evaluate the intensity and persistence of the claimant's symptoms through consideration of the claimant's "medical history, the medical signs and laboratory findings, and statements from [the claimant, the claimant's] treating or examining physician or psychologist, or other persons about how [the claimant's] symptoms affect [the claimant]." **20 C.F.R. § 404.1529(c);** *see Schmidt v. Barnhart*, 395 F.3d 737, 746–47 (7th Cir. 2005) ("These regulations and cases, taken together, require an ALJ to articulate specific reasons for discounting a claimant's testimony as being less than credible, and preclude an ALJ from merely ignoring the testimony or relying solely on a conflict between the objective medical evidence and the claimant's testimony as a basis for a negative credibility finding.").

Although a claimant's complaints of pain cannot be totally unsupported by the medical evidence, the ALJ may not make a credibility determination "solely on the basis of objective

medical evidence." SSR 96-7p, at *1; *see Moore v. Colvin*, 743 F.3d 1118, 1125 (7th Cir. 2014)

("'[T]he ALJ cannot reject a claimant's testimony about limitations on her daily activities solely

by stating that such testimony is unsupported by the medical evidence.'") (quoting *Indoranto*,

374 F.3d at 474); *Indoranto*, 374 F.3d at 474; *Carradine v. Barnhart*, 360 F.3d 751, 754 (7th

Cir. 2004) ("If pain is disabling, the fact that its source is purely psychological does not disentitle

the applicant to benefits."). Rather, if the

> [c]laimant indicates that pain is a significant factor of his or her
> alleged inability to work, the ALJ must obtain detailed descriptions
> of the claimant's daily activities by directing specific inquiries
> about the pain and its effects to the claimant. She must investigate
> all avenues presented that relate to pain, including claimant's prior
> work record, information and observations by treating physicians,
> examining physicians, and third parties. Factors that must be
> considered include the nature and intensity of the claimant's pain,
> precipitation and aggravating factors, dosage and effectiveness of
> any pain medications, other treatment for relief of pain, functional
> restrictions, and the claimant's daily activities. (internal citations
> omitted).

*Luna v. Shalala*, 22 F.3d 687, 691 (7th Cir. 1994); *see Zurawski v. Halter*, 245 F.3d 881,

887-88 (7th Cir. 2001).

In addition, when the ALJ discounts the claimant's description of pain because it is

inconsistent with the objective medical evidence, she must make more than "a single, conclusory

statement . . . . The determination or decision must contain specific reasons for the finding on

credibility, supported by the evidence in the case record, and must be sufficiently specific to

make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to

the individual's statements and the reasons for that weight." SSR 96-7p, at *2; *see Minnick v.*

*Colvin*, 775 F.3d 929, 937 (7th Cir. 2015) ("[A] failure to adequately explain his or her

credibility finding by discussing specific reasons supported by the record is grounds for

reversal.") (citations omitted); *Zurawski*, 245 F.3d at 887; *Diaz v. Chater*, 55 F.3d 300, 307-08

(7th Cir. 1995) (finding that the ALJ must articulate, at some minimum level, his analysis of the evidence). She must "build an accurate and logical bridge from the evidence to [her] conclusion." *Zurawski*, 245 F.3d at 887 (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)). A minor discrepancy, coupled with the ALJ's observations is sufficient to support a finding that the claimant was incredible. *Bates*, 736 F.3d at 1099. However, this must be weighed against the ALJ's duty to build the record and not to ignore a line of evidence that suggests a disability. *Bates*, 736 F.3d at 1099.

The ALJ found Ainsworth incredible, in part, because of his work activity. (Tr. 80). She noted that he continued to work after the alleged onset date and that his self-employment earnings were close to substantial gainful activity. (Tr. 80). Moreover, she concluded that his consistent work suggested "far greater abilities than alleged." (Tr. 80). Ainsworth has argued that the ALJ erred by drawing a negative inference based on his work activity. He has claimed that the ALJ failed to analyze his work activity completely by not questioning him about his impairment related expenses or considering his accommodating environment. Ainsworth has not argued that the ALJ's credibility finding was patently wrong but that his work activity should have been a positive factor towards his credibility.

The ALJ noted that Ainsworth worked in his family business through late 2011 or early 2012, which was after his alleged onset date, and that he started doing less work about a year before the hearing. Although the ALJ did not elaborate why Ainsworth's consistent work suggested greater abilities than he alleged, the record demonstrated that he claimed he could not work at all starting in January 2009, despite consistently working through 2011 or early 2012. Therefore, the record supported her negative credibility inference based on Ainsworth's work

activity.  Moreover, the ALJ may rely on an inconsistency between Ainsworth's allegations and the record to find him incredible.

However, the ALJ also presented other reasons for discounting Ainsworth's credibility. She reviewed the objective medical evidence and determined that it did not support Ainsworth's claims of disabling symptoms and limitations.  For example, the ALJ noted that Ainsworth had normal physical examinations and that medication controlled some of his conditions and symptoms.  She found inconsistencies between his daily living activities and his allegations. Specifically, she indicated that his ability to clean, shop, cook, and do yard work suggested an ability to perform light work because they involved lifting and standing.  Furthermore, the ALJ mentioned that Ainsworth declined physical therapy because of the demands of his job. Therefore, the ALJ built a logical bridge from the evidence to her credibility determination and her credibility determination was not patently wrong.

Fourth, Ainsworth has argued that the ALJ erred by rejecting Dr. Kollipara's opinion.  A treating source's opinion is entitled to controlling weight if the "opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record.  **20 C.F.R. § 404.1527(d)(2)**; *see Bates v. Colvin*, 736 F.3d 1093, 1099 (7th Cir. 2013); *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011); *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007).  The ALJ must "minimally articulate his reasons for crediting or rejecting evidence of disability."  *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000) *(*quoting *Scivally v. Sullivan*, 966 F.2d 1070, 1076 (7th Cir. 1992)); *see* **20 C.F.R. § 404.1527(d)(2)** ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.").

"'[O]nce well-supported contradicting evidence is introduced, the treating physician's evidence is no longer entitled to controlling weight' and becomes just one more piece of evidence for the ALJ to consider." *Bates*, 736 F.3d at 1100. Controlling weight need not be given when a physician's opinions are inconsistent with his treatment notes or are contradicted by substantial evidence in the record, including the claimant's own testimony. *Schmidt*, 496 F.3d at 842 ("An ALJ thus may discount a treating physician's medical opinion if the opinion is inconsistent with the opinion of a consulting physician or when the treating physician's opinion is internally inconsistent, as long as he minimally articulates his reasons for crediting or rejecting evidence of disability."); *see, e.g.*, *Latkowski v. Barnhart*, 93 Fed. App'x 963, 970-71 (7th Cir. 2004); *Jacoby v. Barnhart*, 93 Fed. App'x 939, 942 (7th Cir. 2004). If the ALJ was unable to discern the basis for the treating physician's determination, the ALJ must solicit additional information. *Moore v. Colvin*, 743 F.3d 1118, 1127 (7th Cir. 2014) (citing *Similia v. Astrue*, 573 F.3d 503, 514 (7th Cir. 2009)). Ultimately, the weight accorded a treating physician's opinion must balance all the circumstances, with recognition that, while a treating physician "has spent more time with the claimant," the treating physician may also "bend over backwards to assist a patient in obtaining benefits . . . [and] is often not a specialist in the patient's ailments, as the other physicians who give evidence in a disability case usually are." *Hofslien v. Barnhart*, 439 F.3d 375, 377 (7th Cir. 2006) (internal citations omitted); *see Punzio*, 630 F.3d at 713.

Dr. Kollipara concluded that Ainsworth was disabled because his attention and concentration would be disrupted constantly. (Tr. 80). She also found that he could not stand, walk, or sit for eight hours during a workday and would miss more than four days of work per month. (Tr. 80). Additionally, she included postural, environmental, and reaching restrictions. (Tr. 80). However, the ALJ gave her opinion no weight. (Tr. 80).

The ALJ acknowledged that Dr. Kollipara was Ainsworth's treating physician for his hypertension, chronic obstructive pulmonary disease, hypothyroidism, and other acute illnesses, but she found that the scope of Dr. Kollipara's treatment did not support his opinion. (Tr. 81). Thus, indicating that Dr. Kollipara's treatment would not have led to the conclusions he opined. Additionally, the ALJ found Dr. Kollipara's conclusions inconsistent with his treatment notes, which included generally benign physical examinations. (Tr. 81). Furthermore, she stated that Dr. Kollipara's conclusions were inconsistent with the objective medical evidence, such as Ainsworth's improvement after surgery and normal gait. (Tr. 81). Last, the ALJ found his conclusions inconsistent with Ainsworth's daily living activities, which suggested an ability to perform light work. (Tr. 81).

The ALJ at least minimally articulated her reasons for rejecting Dr. Kollipara's opinion. She found the opinion inconsistent with Dr. Kollipara's treatment notes, the objective medical evidence, and Ainsworth's daily living activities. Additionally, the ALJ indicated that Dr. Kollipara's conclusions exceeded the scope of his treatment. Therefore, the ALJ did not err by rejecting Dr. Kollipara's opinion.

Last, Ainsworth has claimed that the ALJ misconstrued his approval letter from Medicaid for Employees with Disabilities. Ainsworth submitted the approval letter, which indicated that he was eligible for M.E.D. Works coverage. (Tr. 245). The letter also stated that the program was for working individuals with disabilities. (Tr. 245). The ALJ noted that the program was for people who were working and concluded that the letter indicated that Ainsworth was not disabled. (Tr. 81). She gave the letter some weight, but stated that findings from other agencies were not binding on her decision. (Tr. 81).

Ainsworth has argued that the ALJ should not have considered the approval letter to find him disabled without reviewing the program's approval criteria. The ALJ did not explain how M.E.D. Works granted coverage or how it compared to the Social Security regulations. However, the Commissioner indicated that Ainsworth failed to identify any errors with the ALJ's conclusion or how the letter contradicted the ALJ's conclusion. Although the ALJ could have further explained the M.E.D. Works program and how it granted coverage to Ainsworth, substantial evidence supported her RFC finding.

SSR 96-8p explains how an ALJ should assess a claimant's RFC at steps four and five of the sequential evaluation. In a section entitled, "Narrative Discussion Requirements," SSR 96-8p specifically spells out what is needed in the ALJ's RFC analysis. This section of the Ruling provides:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p (footnote omitted). Thus, as explained in this section of the Ruling, there is a difference between what the ALJ must contemplate and what she must articulate in her written decision. "The ALJ is not required to address every piece of evidence or testimony presented, but he must provide a 'logical bridge' between the evidence and his conclusions." *Getch v. Astrue*, 539 F.3d 473, 480 (7th Cir. 2008) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)); *see Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014). Although the ALJ does not

need to discuss every piece of evidence, she cannot ignore evidence that undermines her ultimate conclusions. *Moore*, 743 F.3d at 1123 ("The ALJ must confront the evidence that does not support her conclusion and explain why that evidence was rejected.") (citing *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009); *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012)). "A decision that lacks adequate discussion of the issues will be remanded." *Moore*, 743 F.3d at 1121.

The ALJ built a logical bridge between the evidence and her RFC assessment. She reviewed the objective medical evidence and how it supported her RFC assessment. She also discussed the opinion evidence, which included giving great weight to the State agency medical consultants and some weight to Dr. Shugart and Ainsworth's mother. Furthermore, the ALJ reviewed the inconsistencies in the record by rejecting Dr. Kollipara's opinion. Therefore, she built a logical and accurate bridge between the evidence and her RFC assessment without relying on the approval letter. Thus, substantial evidence supported the ALJ's decision without considering the approval letter.

Based on the foregoing reasons, the decision of the Commissioner is **AFFIRMED**.

ENTERED this 31st day of August, 2015.

/s/ Andrew P. Rodovich
United States Magistrate Judge